## HARRIS, Respondent, v. KNIGHTS AND LADIES OF HONOR, Appellant.

### St. Louis Court of Appeals, February 18, 1908.

1. **INSURANCE: Fraternal Beneficiary Societies: Pleading.** In an action on a benefit certificate in a fraternal beneficiary society, where the defense pleaded was false representations as to the physical condition of the applicant and a general allegation that the applicant did not comply with the by-laws of the society so that his certificate never became operative, this was not sufficient to admit evidence that after the application was made the applicant had had a spell of sickness before he was initiated as a member . into the society and had fraudulently concealed the fact.

2. ————: ————: **Misrepresentations.** Where the application for a benefit certificate in a fraternal beneficiary society stated among other things in answer to questions propounded to the applicant that he had not been attended by a physician professionally within five years, this statement was not rendered untrue by the fact that within that time he had called upon his doctor for the purpose of paying a bill and while there mentioned that he had difficulty with his hearing and the doctor on examination discovered and extracted an accumulation of wax from his ear, it appearing that the ailment was not uncommon, nor evidence tending to show the presence of any bodily disease or a condition inconsistent with sound health.

Appeal from Wayne Circuit Court.—*Hon. Jos. J. Williams,* Judge.

AFFIRMED.

Lew R. Thomason for appellant.

Orrin L. Munger and J. Frank Meador for respondent.

BLAND, P. J.—The defendant is an incorporated fraternal benefit society authorized to do business in this State.    O. C. Harris became a member of the order about April 5, 1905, on which date defendant issued to him a Relief Fund Certificate, whereby defendant agreed to pay plaintiff—the wife of said O. C. Harris—out of the relief fund of the order, a sum not exceeding $1,000, on the death of said O. C. Harris.    On May 23, 1905, Harris died of typhoid fever.    Defendant refused to pay the insurance and this action is brought on the certificate to recover the amount thereof ($1,000). The petition is in the ordinary form.    The answer admitted the issuance of the certificate, alleged that Harris made application for the certificate, which application as well as the by-laws of the order were made a part of the contract of insurance, and "that in said application to participate in the relief fund of the defendant company, the said Harris stated that he was in good health, which said statement was false and not true; that said Harris was at the time and for a long time prior thereto, suffering from chronic nasal catarrh, and general weakness or debility; that at the time of making of his said application, there was propounded to said Harris, by the medical examiner, and contained in his said medical certificate the following question: 'How long since you were attended by a physician or have professionally consulted one?'    That in answer to said question, said Harris stated that he had not been attended by or professionally consulted a physician within five years prior thereto, and which said answer

Harris v. Knights and Ladies of Honor.

and statement of the said Harris was false and not true.

"Defendant further answering, states that the said O. C. Harris did not comply with the by-laws of the defendant company in procuring the issuing to him of said benefit certificate, by reason whereof the same never became operative, and was and is null and void, and of no effect against this defendant;" and denied every other allegation of the petition.    The reply put at issue the new matter in the answer.    The verdict was for plaintiff for the amount of the certificate.

Defendant introduced no evidence showing or tending to show that O. C. Harris, at the time of making his application, or at any other time prior or subsequent thereto, suffered from either acute or chronic nasal catarrh, or from general weakness or debility.    To show that Harris' answer, "Five years," to the question, "How long since you were attended by a physician or have professionally consulted one?" was false, defendant offered Dr. C. H. Jones as a witness, who testified as follows:

"Q.   State whether or not in June, 1903, you treated him (Harris) as a physician. . . .    A.   I did not treat him for any physical debility.   He came into my office complaining of a pain about his head, and I removed from his ear some 'serulimous' accumulation.

"Mr. Thomason:      When did you say this was done?    A.   June, 1903.

"Q.   Did you treat him at that time as a physician? A.   Yes, sir.

### Cross-examination.

"Q.   (By Mr. Munger).    What was the nature of that ailment—this 'serulimous' accumulation.   What was the nature of that?    Was it liable to develop into some kind of a disease?    A.   No, sir.    It was an accumula-

tion of wax in his ear that was giving him some pain and bothering his hearing.

"Q.  You say that often occurs?   A.  Well, I could not say that it often occurs but it sometimes does occur.

"Q.  When did that occur?   A.  June, 1903.

"Q.  Did he come there for the purpose of that treatment?   A.  He came in to settle part of his bill and, as he was in there, he just happened to mention that there was something wrong with his hearing, and I looked at it and that was the reason I removed it."

Witness also testified that he treated Harris one time in February, 1905, for the la grippe.   The evidence shows this treatment was after Harris had made, signed and delivered his application for insurance but before his initiation into the order, and before he received the certificate sued on.

Section 3, chapter 7, of the by-laws of the order, provides as follows:

"Applicants for relief fund membership, who fail to receive the degree or pay the initial assessment within thirty days from date of approval of their medical examination, or who have suffered any bodily injury, or have taken sick since their examination by the medical examiner, shall be required to submit to another medical examination, and procure a new favorable report, from the subordinate and supreme medical examiners before admission into the relief fund department of the order."

The evidence shows that Harris was not confined to his bed by the attack of la grippe in February, but was only confined to the house for two or three days and then went about his business.   He was sick with typhoid fever about three weeks before he died.   Defendant insists that Harris never became a member of the order for the reason he avoided a compliance with section 3, supra, by fraudulently concealing the fact that he was sick in February.   This defense is not in the

answer and for that reason is not available, and we doubt if the evidence was sufficient to have warranted the court to have submitted this defense to the jury had it been properly pleaded. The whole defense rests upon the evidence of Dr. Jones. Does it show that Harris consulted him as a physician, or that the Doctor treated him within the meaning of the question to which it is alleged Harris made the false answer? We think not. Dr. Jones' evidence shows that Harris did not call for the purpose of consulting him professionally but to pay a bill, and casually remarked about a difficulty in his hearing, and the Doctor, without being requested to do so, looked into Harris' ear and extracted an accumulation of wax therefrom. Strictly speaking, this was treatment by a physician; it would also have been treatment if the doctor had pulled a sliver from Harris' hand or foot, or removed a wild hair or speck of dirt from his eye, or raised the corner of an in-growing toe nail, yet no one would contend that any of these things would be treatment within the meaning of the question contained in the application for insurance. This question should be construed and the answer applied in the light of the many other questions in the application, concerning the physical and functional condition of the applicant at the time the application was made and in times past, and in view of the ultimate fact to be ascertained, to-wit, whether or not the applicant was a desirable or undesirable risk for insurance. An accumulation of wax in the ear is not an uncommon occurrence and is not evidence tending to show the presence of any bodily disease, or depraved condition of the system, nor is it inconsistent with sound health. But aside from any individual opinion of the matter, the court at defendant's request, submitted to the jury to find whether or not Harris' answer was untrue, by giving the following instruction:

"You are further instructed, that if you should find

from the evidence that the said O. C. Harris, in answer to a question propounded to him in his medical examination, stated that it had been five years since he was attended by a physician or had professionally consulted one, and that said statement was not true, then it is immaterial whether or not the ailment for which said Harris was attended by a physician or for which he consulted one, was slight, serious or merely temporary. The plaintiff cannot recover in this cause and your verdict will be for the defendant."

It seems to us the defense is trivial and the jury having found it to be without merit, we affirm the judgment.     All concur.